1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STEVEN G. DUNMORE,

11             Plaintiff,                   No. CIV S-05-1806 LKK DAD PS

12        v.

13   COUNTY OF PLACER, et al.        FINDINGS AND RECOMMENDATIONS

14             Defendants.

15   _____/

16             This matter came before the court on October 27, 2006, for hearing on separate

17   motions for summary judgment filed by defendant ChoicePoint Government Services Inc.

18   (defendant ChoicePoint) and defendants Placer County, Harris, Hudson, Bonner, D'Arcy, and

19   Addoms (Placer County defendants).[1]  Steven G. Dunmore, proceeding pro se, appeared on his

20   own behalf.  Attorney James W. Poindexter appeared for defendant ChoicePoint.  Attorney Brian

21   R. Wirtz appeared for the Placer County defendants.  Defendants' motions were taken under

22   submission.  For the reasons stated below, the undersigned recommends that defendants' motions

23   for summary judgment be granted.

24   _____

25        [1]  Although the Placer County defendants' motion is also captioned as a motion for
     judgment on the pleadings, the motion was not brought pursuant to Rule 12(c) of the Federal
26   Rules of Civil Procedure and does not seek judgment on the pleadings.

                                          1

PROCEDURAL HISTORY

Plaintiff commenced this action on September 8, 2005, by filing a fee-paid complaint against the Placer County Sheriff's Office, Sheriff's Lieutenant Valerie Harris, Detective James Hudson, Sheriff Edward N. Bonner, and Undersheriff Stephen L. D'Arcy. These five defendants filed their answer to plaintiff's original complaint on October 11, 2005. With the defendants' consent, plaintiff filed a first amended complaint on December 20, 2005, and the defendants filed their answer on December 27, 2005.

At a status conference held on January 13, 2006, the court granted plaintiff's unopposed request to further amend his complaint. In the second amended complaint filed February 13, 2006, plaintiff added three new defendants: ChoicePoint Government Services, Inc. (AKA or DBA ChoicePoint Online), CDB Infotek (Intelligent Information), and JFA. On February 23, 2006, the Placer County defendants answered the second amended complaint on their behalf and on behalf of Sheriff's Lieutenant John Addoms, sued as JFA. On March 3, 2006, an answer was filed by defendant ChoicePoint Government Services Inc., sued by plaintiff as ChoicePoint Government Services, Inc. (AKA or DBA ChoicePoint Online) and CDB Infotek (Intelligent Information).

Pursuant to the court's January 26, 2006 scheduling order, discovery closed on September 8, 2006. Pretrial law and motion practice closed on October 27, 2006,with the hearing on defendants' dispositive motions. By order filed December 19, 2006, the pretrial conference was continued to June 4, 2007, and trial was re-set for September 5, 2007.

PLAINTIFF'S CLAIMS

Plaintiff's claims arise from an application he submitted to the Placer County Sheriff's Office in June 2004 for a license to carry concealed weapons. The application was denied in August 2004. Plaintiff alleges that the Placer County defendants unlawfully investigated him in connection with his application and obtained access to and data from a file or files maintained by credit reporting agencies.

1    In his 80-page second amended complaint, plaintiff alleges violations of the Fair

2    Credit Reporting Act, 15 U.S.C. §§ 1681b(a)(3) and (f)(1) - (2), 1681e(a), 1681f, 1681m(a)(1) -

3    (3), 1681n, 1681o, and 1681q; the Consumer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(A)

4    and (C); the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701(a)(2) and 2707(a) - (c);

5    the Social Security Act, 42 U.S.C. § 408(a)(8); the Civil Rights Act, 42 U.S.C. §§ 1983,

6    1985(a)(2) - (3), 1986, and 1988(a); and the California Consumer Credit Reporting Agencies

7    Act, California Civil Code §§ 1785.11(a)(3), 1785.12, 1785.19(a), 1785.20(a)(1) - (4), and

8    1785.31(a)(1) - (3).  Plaintiff alleges violations of other criminal statutes as well as state tort

9    claims.  Plaintiff asserts thirteen claims for relief and seeks extensive damages.  Plaintiff also

10    seeks injunctive relief in the form of the removal of some of the Placer County defendants from

11    their jobs.

12            STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

13    The "purpose of summary judgment is to 'pierce the pleadings and to assess the

14    proof in order to see whether there is a genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587

15    (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Summary

16    judgment is appropriate when it is demonstrated that there exists no genuine issue as to any

17    material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

18    56(c).

19    The party moving for summary judgment "always bears the initial responsibility

20    of informing the district court of the basis for its motion, and identifying those portions of 'the

21    pleadings, depositions, answers to interrogatories, and admissions on file, together with the

22    affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

23    <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

24    nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

25    judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

26    to interrogatories, and admissions on file.'"  <u>Id.</u>

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. Summary judgment should be granted "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). The party opposing summary judgment must demonstrate that the fact in contention is material, i.e., may affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

In attempting to establish the existence of a factual dispute, the party opposing summary judgment may not rely on the allegations or denials of its pleadings but must tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of any contention that a dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. Although the party opposing summary judgment need not establish a material issue of fact conclusively in its favor, "the claimed factual dispute [must] be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In general, the evidence of the party opposing summary judgment is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court

is to be drawn in favor of the party opposing summary judgment.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.  Inferences will not be drawn out of the air, however, and the party opposing summary judgment is obligated to produce a factual predicate from which an inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000); see also Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

DISCUSSION

I. Plaintiff's Opposition to Defendants' Motions

Pursuant to Local Rule 78-230 and this court's scheduling order, plaintiff was required to file and serve his opposition to defendants' properly noticed motions on or before October 13, 2006.  On October 11, 2006, plaintiff requested an extension of time to November 10, 2006, to file opposition and an unspecified related or counter-motion.  The request was denied on the grounds that October 27, 2006 was the final day on which pretrial motions could be heard, plaintiff had delayed his request until two days before his opposition was due, and plaintiff failed to demonstrate good cause for modification of the entire scheduling order.  The court ordered that "any untimely opposition to the pending motions which plaintiff may wish to file prior to the October 27, 2006 hearing shall be accompanied by a request to permit late filing."  (Order filed October 18, 2006, at 2.)

On October 26, 2006, plaintiff filed opposition to defendants' motions along with a request to late-file the opposition.  At 9:49 p.m. on October 26, 2006, plaintiff e-mailed his

1  opposition to counsel for defendants and to the courtroom deputy to the undersigned.  At the

2  hearing on October 27, 2006, the court accepted plaintiff's opposition for filing and permitted

3  plaintiff to participate in oral argument.

4          To the extent that plaintiff's opposition purports to present a counter-motion for

5  summary judgment, the motion was filed out of time, without leave of court, and without making

6  a showing of good cause to modify the scheduling order.  The court did not accept plaintiff's

7  counter-motion for filing, and the untimely motion will be disregarded.

8          In his opposition to defendants' motions for summary judgment, plaintiff attempts

9  to "waive and withdraw" certain claims.  At this stage of the litigation, plaintiff is precluded from

10  voluntarily dismissing any claim except by the stipulation of all parties or by court order.  Fed. R.

11  Civ. P. 41(a).  Plaintiff did not obtain defendants' stipulation to dismissal of any claims and did

12  not move for dismissal of any claims.  Moreover, plaintiff's intentions are not entirely clear.  His

13  references to certain "counts" and specific pages of his second amended complaint render it

14  virtually impossible to determine whether plaintiff wishes to abandon all, or only some, of his

15  claims under the California Credit Reporting Agencies Act.  The court has determined, however,

16  that plaintiff has abandoned all claims under the Fourth Amendment and 18 U.S.C. §§ 2701 and

17  2707, as well as state law claims of unlawful search and trespass.  Those claims should be

18  dismissed as abandoned.  All remaining claims alleged in the second amended complaint are

19  addressed below.

20  II.  Plaintiff's FCRA and CCRAA Claims

21          The Placer County defendants have moved for summary judgment in their favor

22  on the grounds that (1) plaintiff's consent to a background investigation with respect to his

23  application for a concealed weapons permit is a bar to his claims, (2) no Placer County defendant

24  accessed plaintiff's credit reports, (3) defendant Hudson obtained permission, from a person with

25  authority to grant permission, to enter the property where plaintiff lived, (4) plaintiff's claims of

26  failure to train and supervise and failure to perform ministerial duties fail because there were no

underlying wrongful acts, and (5) plaintiff's claims of civil conspiracy fail because the report provided by ChoicePoint was not a consumer credit report for purposes of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq., or the California Credit Reporting Agencies Act (CCRAA), California Civil Code § 1785, et seq.

Defendant ChoicePoint Government Services Inc. seeks judgment in its favor on plaintiff's second amended complaint generally and on plaintiff's thirteenth claim for relief in particular. Claim 13 contains plaintiff's allegation that defendant ChoicePoint "willfully conspired or negligently aided and abetted" the Placer County defendants in accessing public records regarding plaintiff in violation of FCRA and CCRAA.

The defendants have supported their separate motions for summary judgment with a joint statement of undisputed facts, filed as document # 44 on the court's docket. The defendants' motions are also supported by exhibits, declarations, and deposition testimony.

Defendants' evidence establishes that in 2004 the Placer County Sheriff's Office subscribed to a database service known as ChoicePoint Online. (Def't ChoicePoint's Mot. for Summ. J., Decl. of Jennifer L. Vowels ¶¶ 2, 4 & 6.) Law enforcement agencies used the ChoicePoint Online system to obtain public records and identification information for law enforcement purposes. (Id. ¶¶ 3 & 4.) A subscriber to ChoicePoint Online could log on to the system with a user code and password, enter information, such as a social security number or a name, regarding the person for whom information was sought, and the system would retrieve responsive information, including identification information, such as names and aliases, and public records data, such as information about tax liens, bankruptcies, and judgments. (Id. ¶¶ 2, 5 & 8.) ChoicePoint Online afforded its subscribers a quick and cost-effective means of obtaining identification and public records information. (Id. ¶ 2.)

The Placer County Sheriff's Office originally subscribed to ChoicePoint Online through ChoicePoint's predecessor company, CDB Infotek, pursuant to a written agreement dated June 22, 1999. (Id. ¶ 4.) ChoicePoint Government Services Inc. assumed the service

agreement with Placer County Sheriff's Office after CDB Infotek was acquired by ChoicePoint. (Id.)  Placer County Sheriff's Office renewed the service agreement each year by written purchase order, including a purchase order dated June 2, 2004, for the fiscal year July 1, 2004, through June 30, 2005.  (Id. ¶ 4 & Ex. A.)

Placer County Sheriff's Office used the ChoicePoint Online database only for law enforcement purposes.  (Placer County Def'ts' Mot. for Summ. J., Decl. of Brian R. Wirtz, Ex. F (Dep. of Jim Hudson at 15-16).)  The County of Placer contracted separately with another database service, Fidelity National Credit Services, for information governed by credit reporting laws, and that database service was used for pre-employment screening and investigative consumer purposes.  (Id., Ex. G.)

On June 15, 2004, plaintiff applied to the Placer County Sheriff's Office for a concealed weapons permit.  He completed and submitted a "Standard Application for CCW License" requesting a permit to carry three concealed handguns.  (Id., Ex. A.)  The form required plaintiff to (1) provide proof of residency in Placer County, (2) provide proof of weapons training at a course approved by the Placer County Sheriff's Office, (3) demonstrate good moral character, and (4) establish good cause to support the request for a permit to carry concealed weapons.  (Id. at 5.)  The form includes the following two provisions concerning a background investigation:

> The licensee authorizes the licensing agency to investigate, as they deem necessary, the licensee's record and character to ascertain any and all information which may concern his/her qualifications and justification to be issued a license to carry a concealed weapon and release said agency of any and all liability arising out of such investigation.
>
> . . . .
>
> I hereby give permission to the agency to which this application is made to conduct a background investigation of me and to contact any person or agency who may add to or aid in this investigation.  I further authorize persons, firms, agencies and institutions listed on this application to release or confirm information about me and statements I have made as contained in this application.

1  (Id. at 6 & 14.)  By signing the form, plaintiff authorized a background investigation for use in

2  deciding whether to grant his application.  (Id.)

3            Defendant Valerie Harris was employed by the Placer County Sheriff's Office

4  between June and August 2004 and was at that time assigned the duty of processing applications

5  for concealed weapons permits.  (Placer County Def't's' Mot. for Summ. J., Decl. of Valerie

6  Harris ¶¶ 1 & 4.)  Defendant Harris was the principal officer charged with investigating

7  plaintiff's application.  (Id. ¶ 5.)  As part of the routine processing of plaintiff's application, she

8  reviewed the application, ran a criminal history through local records and the National Crime

9  Information Center, and obtained a DMV report.  (Id. ¶ 6.)  She was concerned about some of the

10  entries on plaintiff's application, including a family law stay away order, two lawsuits filed in

11  federal court, two state criminal charges that were dismissed, plaintiff's application for concealed

12  weapon permits in other counties and other states, and plaintiff's lack of weapons training at an

13  approved course.  (Id. ¶ 7.)  Defendant Harris was also concerned about plaintiff's failure to

14  provide written evidence, such as a copy of a utility bill or tax assessor bill, verifying that he

15  resided in Placer County at the address given in the application.  (Id. & Ex. A at 2.)

16            At defendant Harris's request, defendant Hudson, a Placer County Sheriff's Office

17  detective, obtained a ChoicePoint Online report in an attempt to verify plaintiff's residence

18  address.  (Placer County Def'ts' Mot. for Summ. J., Wirtz Decl., Exs. F (Hudson Dep. at 12-16

19  & 18) & H.)  The report was obtained by entering user identification information, indicating that

20  the report was for law enforcement purposes, and entering the social security number provided by

21  plaintiff in his application.  (Id.)  The report did not disclose a Placer County address for plaintiff

22  but identified several tax liens, a prior bankruptcy, and other public records information

23  regarding plaintiff, including the fact that he had previously changed his name.  (Id., Wirtz Decl.,

24  Ex. H.)  Plaintiff does not dispute the accuracy of the information in the report obtained from

25  ChoicePoint Online and has in fact stipulated that the information was correct.  (Id., Wirtz Decl.,

26  Ex. I (Dep. of John Addoms, Vol. II at 5).)

1    Defendant Harris asked defendant Hudson to attempt to contact plaintiff at the

2    address given in his application for a concealed weapons permit. (Placer County Def'ts' Mot. for

3    Summ. J., Harris Decl., Ex. A at 3.) On July 16, 2004, defendant Hudson went to the address,

4    was unable to enter the property through the gate, and called a telephone number given in

5    plaintiff's application. (Id., Decl. of James Hudson ¶¶ 4-7 and Attach. 2.) Plaintiff answered the

6    telephone but denied being Steven Dunmore. (Id.) A woman who grazed her horses on the

7    property gave defendant Hudson permission to enter the property after Hudson identified himself

8    as a detective, and she opened the gate for him as she left the property. (Id.) Defendant Hudson

9    drove up to the house and knocked at the front door, but nobody answered. (Id.)

10    On July 21, 2004, defendants Harris and Hudson met with plaintiff to discuss his

11    permit application. (Id., Harris Decl., Ex. A at 3-4.) They asked plaintiff about his failure to

12    identify himself when defendant Hudson called on July 16, 2004, and about the tax liens.

13    Defendants explained that the Placer County Sheriff's Office had concerns about plaintiff's tax

14    liens, his attempts to conceal his residence because of debts, his name change, his pursuit of

15    concealed weapon permits in various states, and the prior restraining orders. (Id.) During the

16    meeting, plaintiff voluntarily admitted that the concealed weapons permit issued to him by Napa

17    County had been revoked, a fact he had omitted from his Placer County application for a

18    concealed weapons permit. (Id.) Later that day, plaintiff left defendant Harris a voice mail

19    message instructing her to contact the person he had given as a reference and whom she had been

20    trying to reach, but instructing her to discontinue additional efforts to verify other information

21    about his background. (Id. at 4-5.) Defendant Harris was unable to speak to the person plaintiff

22    had given as a reference and discontinued further background investigation at plaintiff's request.

23    (Id. at 5.) Defendant Harris recommended that defendant D'Arcy, the undersheriff, deny

24    plaintiff's permit application. (Id.) Defendant D'Arcy sent plaintiff a letter dated August 5,

25    2004, denying plaintiff's application for a concealed weapons permit. (Id. & Wirtz Decl., Ex. K.)

26    /////

On August 17, 2004, plaintiff obtained a consumer credit report regarding himself. (Pl.'s Second Am. Compl. at 9.) One page of the report obtained by plaintiff is titled "Creditor Information" and lists names of "all creditors that appear on your credit report," including "companies that have made an inquiry into your credit history." (Placer County Def'ts' Mot. for Summ. J., Wirtz Decl., Ex. B; Pl.'s Original Compl., Ex. A.) The Creditor Information page includes an entry for "Placer County Court RD," telephone number 916-889-7088. (Id.) The page contains no entry for or any reference to Placer County Sheriff's Office or any defendant in this case. (Id.) The telephone number give for "Placer County Court RD" was not a telephone number for any Placer County office at that time. (Placer County Def'ts' Mot. for Summ. J., Decl. of Jerry Gamaz ¶ 3.) Defendant Harris did not obtain or order anyone to obtain a credit history regarding plaintiff from any credit bureau in connection with plaintiff's application for a concealed weapons permit or for any other purpose. (Id., Harris Decl. ¶ 7.)

Defendants note that plaintiff's claims are not grounded on the denial of his application for a concealed weapons permit but instead arise from his contention that the Placer County defendants improperly obtained his credit history and unlawfully entered onto his property. Defendants contend that neither the actions of the Placer County defendants in ordering a ChoicePoint report nor the actions of ChoicePoint in providing a report violated any federal or state law. Defendants argue that the report was not a consumer report for purposes of either the FCRA or the CCRAA. The Placer County defendants argue further that plaintiff authorized the Placer County Sheriff's Office to conduct the background investigation that was conducted.

Plaintiff alleges repeatedly in his second amended complaint that the Placer County Sheriff's Office unlawfully accessed his consumer data with Trans Union or Equifax or Experian Credit Reporting Agencies. (See Second Am. Compl. ¶¶ 36, 63, 88, 104, 118, 132, 145 & 161.) He alleges that the Placer County Sheriff's Office "obtained access to and data from a 'file' . . . maintained by Trans Union and possibly other credit reporting agencies (CRAs), via

11

1  co-defendant [ChoicePoint]." (Id. ¶ 26.) In opposition to defendants' motions, plaintiff admits

2  that these allegations are incorrect, but he still maintains that defendant ChoicePoint "acted or

3  undertook to act as a 'consumer reporting agency' or a third party 'reseller' of consumer

4  information." (Pl.'s Opp'n at 7.)

5              Plaintiff has neither offered nor cited evidence that any Placer County defendant

6  ever ordered plaintiff's credit history or any consumer credit information about plaintiff from any

7  credit bureau while conducting a background investigation pursuant to plaintiff's application for

8  a concealed weapons permit. Nor has plaintiff offered or pointed to any evidence that supports a

9  dispute of fact on this allegation. Plaintiff has not demonstrated that the Placer County Sheriff's

10  Office is the same entity as the Placer County Court or that the entity identified on the credit

11  report obtained by plaintiff as "Placer County Court RD" was in fact the Placer County Sheriff's

12  Office. The record before the court contains no evidence from which it can be inferred that any

13  Placer County defendant ordered a credit report concerning plaintiff or that ChoicePoint provided

14  any Placer County defendant with such a report. There is no evidence that gives rise to a dispute

15  in this regard.

16              FCRA regulates the dissemination of information contained in consumer reports.

17  15 U.S.C. §§ 1681n & 1681o. "Consumer report" is defined as follows:

18         The term "consumer report" means any written, oral, or other
           communication of any information by a consumer reporting agency
19         bearing on a consumer's credit worthiness, credit standing, credit
           capacity, character, general reputation, personal characteristics, or
20         mode of living which is used or expected to be used or collected in
           whole or in part for the purpose of serving as a factor in
21         establishing the consumer's eligibility for –

22         (A) credit or insurance to be used primarily for personal, family, or
           household purposes;
23
           (B) employment purposes, or
24
           (C) any other purpose authorized under section 1681b of this title.
25

26  15 U.S.C. § 1681a(d)(1). The "other purposes" authorized under § 1681b are disclosure in

response to a court order or a subpoena issued in connection with federal grand jury proceedings, disclosure at the request of a government child support agency, disclosure pursuant to the consumer's own written instructions, disclosure in connection with the consumer's eligibility for a license where the licensing agency is required by law to consider the licensee's financial responsibility or status, and disclosure where there is a legitimate business need in connection with a business transaction initiated by the consumer. 15 U.S.C. § 1681b(a).

Here, the ChoicePoint report obtained by the Placer County defendants does not include consumer credit information, does not contain information collected in whole or in part for a reason specified in § 1681a(d)(1) or § 1681b(a), and does not contain information that was used for a reason specified in § 1681a(d)(1) or § 1681b(a). Plaintiff has neither cited nor offered evidence that supports the existence of a genuine issue of material fact in this regard. On this record, all defendants are entitled to summary judgment on plaintiff's FCRA claims.

Similarly, state law predicates liability on disclosure of a "consumer credit report." Cal. Civil Code §§ 1785.11 & 1785.14. "[T]he definition of 'consumer credit report' in CCRAA is not as broad as the definition under FCRA." Cisneros v. U.D. Registry, Inc., 39 Cal. App. 4th 548, 559 (1995). The statute defines "consumer credit report" as

> any written, oral, or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for: (1) credit to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) hiring of a dwelling unit . . ., or (4) other purposes authorized in Section 1785.11.

Cal. Civil Code § 1785.3(c). The "other purposes" authorized in § 1785.11 are as follows: disclosure related to insurance, disclosure pursuant to court order, disclosure at the request of a government child support agency, disclosure pursuant to the consumer's own written instructions, disclosure in connection with eligibility for a government license or benefit where the agency is required by law to consider the applicant's financial responsibility or status, and

13

1   disclosure for business purposes in connection with a business transaction involving the

2   consumer.  Cal. Civil Code § 1785.11.

3          The ChoicePoint report obtained by the Placer County Sheriff's Office does not

4   include any consumer credit information, and plaintiff has not offered or cited evidence that the

5   information in the report was collected in whole or in part for a reason specified in § 1785.3(c) or

6   § 1785.11.  Nor has plaintiff offered or pointed to evidence that supports the existence of a

7   genuine issue of material fact in this regard.  On this record, all defendants are entitled to

8   summary judgment on plaintiff's CCRAA claims.

9          The Placer County defendants appear to be entitled to summary judgment on

10  plaintiff's FCRA and CCRAA claims on the additional ground that plaintiff expressly authorized

11  the Placer County Sheriff's Office to conduct a background investigation in connection with his

12  application for a concealed weapons permit.  At oral argument, plaintiff conceded that the Placer

13  County Sheriff's Office was entitled to conduct a background investigation and had broad

14  discretion to deny his application for a concealed weapons permit.  The application signed by

15  plaintiff gave the Placer County Sheriff's Office authority "to investigate, as they deem

16  necessary, the licensee's record and character to ascertain any and all information which may

17  concern his/her qualifications and justification to be issued a license to carry a concealed weapon

18  and release said agency of any and all liability arising out of such investigation."  The signed

19  application also gave the Placer County Sheriff's Office authority to conduct a background

20  investigation "and to contact any person or agency who may add to or aid in this investigation."

21  Defendants' evidence demonstrates that the public records information included in the

22  /////

23  /////

24  /////

25  /////

26  /////

1  ChoicePoint report concerned plaintiff's identification, address, record, and character, all of

2  which were matters within the scope of the investigation authorized by plaintiff.[2]

3  III.  Other Claims Alleged in the Second Amended Complaint

4          Plaintiff's second amended complaint alleges civil and criminal violations of the

5  Consumer Fraud and Abuse Act, the Electronic Communications Privacy Act, the Social Security

6  Act, and state law.  Each alleged violation is predicated on defendants' having violated the

7  FCRA or the CCRAA.  In the absence of evidence demonstrating the existence of at least a

8  disputed issue of material fact with regard to the alleged FCRA and CCRAA violations, there is

9  no factual or legal basis for plaintiff's claims under federal and state statutes that predicate

10  liability on the violation of other statutes.

11          Similarly, in the absence of at least a disputed issue of material fact with regard to

12  the alleged violation of the FCRA or the CCRAA, there is no factual basis for plaintiff's claims

13  that supervisory defendants failed to adequately train and supervise subordinate defendants or

14  that supervisory defendants acquiesced in, approved of, or ratified allegedly unlawful actions of

15  subordinate defendants with regard to consumer credit information.

16          Finally, the evidence shows that defendants are entitled to summary judgment on

17  plaintiff's claims of criminal and civil conspiracy under 18 U.S.C. § 241 and 42 U.S.C. §§ 1985,

18  1986, and 1988.

19          "A civil conspiracy is a combination of two or more persons who,
    by some concerted action, intend to accomplish some unlawful
20          objective for the purpose of harming another which results in
    damage." Vieux v. East Bay Reg'l Park Dist., 906 F.2d 1330,

21

22      [2] Plaintiff asserted at oral argument on October 27, 2006, that he did not consent to
    defendants' use of his social security number to conduct the background investigation he had
23  authorized.  Plaintiff has offered no evidence that he refused to provide his social security
    number, that he provided his social security number under protest, that he stated any objection to
24  providing his social security number, that he attempted to limit the use of his social security
    number, or that, having provided his social security number, he had any basis for believing
25  defendants would not use it in conducting their background investigation.  Defendants' evidence
    shows that the number was used solely for the purpose of obtain identification and public records
26  information.

1343 (9th Cir. 1990) (citation and internal quotation marks omitted).  To prove a civil conspiracy, the plaintiff must show that the conspiring parties "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement."  Id. (citation and internal quotation marks omitted).

Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999).  The record contains no evidence from which it can be inferred that two or more of the defendants reached a unity of purpose, a common design and understanding, or a meeting of the minds in an unlawful arrangement to violate plaintiff's rights.  The record also contains no evidence that two or more of the defendants engaged in a concerted action that resulted in damage to plaintiff.

Having carefully considered plaintiff's pleadings, all written materials submitted in connection with defendants' motions for summary judgment, and the parties' arguments in open court, the undersigned finds that all defendants are entitled to summary judgment on all claims alleged in the second amended complaint.  After multiple amendments to his pleading and adequate time for discovery, plaintiff has failed to demonstrate the existence of a genuine issue of material fact on elements essential to his claims and on which he will bear the burden of proof at trial.  The undersigned will therefore recommend that summary judgment be granted in favor of all defendants on all claims.

IV.  Privacy Act

In plaintiff's belated opposition to defendants' motions, plaintiff asserts that

the PCSO defendants also violated several federal civil and criminal laws, and thus plaintiff's right to privacy and other statutory rights, by willfully and intentionally requesting or requiring, disclosing and using plaintiff's Social Security Number (SSN) (Plaintiff's SUF ##1), in violation of Section 7(b) of the federal Privacy Act of 1974, Pub. L. 93-579, § 7, 88 Stat. 1896, 1909 (1974) and Title 28 C.F.R. § 25.7(b), infra, and also violated and deprived plaintiff's statutory rights under Title 42 U.S.C. § 408(a)(8) (a federal felony to disclose and/or use any person's SSN in violation of other laws of the United States).

(Pl.'s Opp'n at 9 (emphasis and footnotes omitted).)

/////

16

1    Section 7(b) of the Privacy Act provides that "[a]ny Federal, State, or local

2 government agency which requests an individual to disclose his social security number shall

3 inform that individual whether that disclosure is mandatory or voluntary, by what statutory or

4 other authority such number is solicited, and what uses will be made of it."  Privacy Act of 1974,

5 Pub. L. No. 93-579, § 7, 88 Stat. 1896, 1909 (1974), *reprinted in* 5 U.S.C. § 552a note.  Section

6 7 of the Privacy Act is not codified and appears only in the "Historical and Statutory Note"

7 following 5 U.S.C. § 552a.

8    Plaintiff argues that the Placer County Sheriff's Office violated § 7(b) by

9 obtaining and using his social security number without his informed and voluntary consent and

10 thereby committed a felony under 42 U.S.C.§ 408(a)(8).  Citing Stollenwerk v. Miller, No. Civ.

11 A. 04-5510, 2006 WL 463393 (E.D. Pa. Feb. 24, 2006), plaintiff contends that he has a private

12 right of action under § 7(b).

13    Plaintiff's second amended complaint alleges in great detail numerous statutes,

14 both federal and state, violated by the defendants.  The pleading does not allege a violation of the

15 Privacy Act.  Plaintiff, apparently anticipating defendants' objection that the alleged Privacy Act

16 violation is a new claim, asserts that he "is not required by law to allege every possible fact or

17 scenario in his Complaint, as amended, to support his Claims for Relief."  He argues that he

18 ascertained "additional supporting facts" post-complaint and is entitled to rely on such facts and

19 pertinent law.  (Pl's Opp'n at 3.)  At oral argument, when defendants' counsel indicated that they

20 were hearing plaintiff's privacy claim for the first time, plaintiff suggested that counsel should

21 have deposed him.

22    Plaintiff's arguments are not persuasive.  His assertion of a Privacy Act violation

23 is a new claim rather than a mere factual allegation offered in support of claims alleged in the

24 second amended complaint.  The undersigned has therefore considered whether plaintiff should

25 be granted leave to amend his complaint a third time to allege a claim under the Privacy Act.  See

26 Fed. R. Civ. P. 15(a) (once a responsive pleading has been filed, the plaintiff may amend his

17

1    complaint "only by leave of court or by written consent of the adverse party").  "Valid reasons

2    for denying leave to amend include undue delay, bad faith, prejudice, and futility."  <u>California</u>

3    <u>Architectural Bldg. Prod. v. Franciscan Ceramics</u>, 818 F.2d 1466, 1472 (9th Cir. 1988).

4    Prejudice to opposing parties is the most important factor in considering whether to grant leave

5    to amend.  <u>Jackson v. Bank of Hawaii</u>, 902 F.2d 1385, 1387 & 1988 n.3 (9th Cir. 1990).

6            Here, leave to amend should be denied for numerous reasons.  Discovery and

7    motion practice are closed, and the defendants have demonstrated their entitlement to summary

8    judgment on all claims alleged in plaintiff's second amended complaint.  In addition to undue

9    delay and prejudice to defendants, amendment would be futile.

10           Section 7 of the Privacy Act contains no remedy provision of its own, and the

11   private right of civil action created by the Privacy Act and codified in 5 U.S.C. § 552a(g) "is

12   specifically limited to actions against agencies of the United States Government."  <u>Unt v.</u>

13   <u>Aerospace Corp.</u>, 765 F.2d 1440, 1447 (9th Cir. 1981).  "The civil remedy provisions of the

14   statute do not apply against private individuals, state agencies, private entities, or state and local

15   officials."  <u>Id.</u>  <u>See</u> also <u>Cell Assocs., Inc. v. Nat'l Insts. of Health</u>, 579 F.2d 1155, 1159-60 (9th

16   Cir. 1978) (affirming the district court's denial of injunctive relief in a suit brought under the

17   Privacy Act on the ground that "Congress did not intend to authorize the issuance of injunctions

18   prohibiting disclosures of protected materials.").

19           The Ninth Circuit has also determined that 42 U.S.C. § 1983 does not provide a

20   private right of action for violations of § 7 of the Privacy Act.  <u>See</u> <u>Dittman v. California</u>, 191

21   F.3d 1020, 1029 (9th Cir. 1999).  Section 1983 provides a private right of action for a violation

22   of a federal statute "'only if the statute creates enforceable rights and if Congress has not

23   foreclosed such enforcement in the statute itself.'"  191 F.3d at 1027-28 (quoting <u>Legal Servs. v.</u>

24   <u>Arnett</u>, 114 F.3d 135, 138 (9th Cir. 1997)).  A remedy under § 1983 may be foreclosed by

25   Congress either "'expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly,

26   by creating a comprehensive enforcement scheme that is incompatible with individual

                                                    18

enforcement under § 1983.'" Id. at 1028 (quoting Blessing v. Freestone, 520 U.S. 329, 341 (1997)). "[B]y limiting the scope of the Privacy Act's civil remedy provision, 5 U.S.C. § 552a(g), Congress clearly intended to 'foreclose private enforcement' against any entity *other than* federal agencies." Id. at 1029 (emphasis in original).

In the absence of a means of enforcing the provisions of § 7 of the Privacy Act, it would be futile to permit plaintiff to file a third amended complaint alleging a Privacy Act violation. See Foman v. Davis, 371 U.S. 178, 182 (1962).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's federal claims under the Fourth Amendment and 18 U.S.C. §§ 2701 and 2707 and state claims of unlawful search and trespass be dismissed with prejudice;

2. The September 26, 2006 motion for summary judgment filed by defendants Placer County, Valerie Harris, James Hudson, Edward N. Bonner, Stephen L. D'Arcy, and John Addoms (sued as JFA) be granted as to all remaining claims;

3. The September 26, 2006 motion for summary judgment filed by defendant ChoicePoint Government Services Inc., sued as ChoicePoint Government Services, Inc. (AKA or DBA ChoicePoint Online) and CDB Infotek (Intelligent Information), be granted as to all claims;

4. The September 26, 2006 motion in the alternative for judgment on the pleadings filed by the Placer County defendants be denied; and

5. Judgment be entered for defendants and this action be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty (20) days after being served with these findings and recommendations, any party may file and serve written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed and served within ten (10) days after the objections are served. The parties are advised that failure to /////

1  file objections within the specified time may, under certain circumstances, waive the right to

2  appeal the District Court's order.  <u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: April 24, 2007.

4

5  _____

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:kw
   ddad1\orders.prose\dunmore1806.oahf&r

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26